1

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

TURNER CONSTRUCTION COMPANY,     .    Civil Action No. 1:17cv799
                                 .
    Plaintiff/Counterclaim       .
    Defendant,                   .
                                 .
        vs.                      .    Alexandria, Virginia
                                 .    February 2, 2018
WASHINGTON METROPOLITAN AREA     .    10:39 a.m.
TRANSIT AUTHORITY,               .
                                 .
    Defendant/Counterclaim       .
    Plaintiff, and               .
    Third-Party Plaintiff,       .
                                 .
        vs.                      .
                                 .
ISKALO CBR LLC,                  .
                                 .
    Third-Party Defendant.       .
                                 .
. . . . . . . . . . .

TRANSCRIPT OF MOTION HEARING
BEFORE THE HONORABLE LEONIE M. BRINKEMA
UNITED STATES DISTRICT JUDGE

APPEARANCES:

FOR TURNER CONSTRUCTION           DOUGLAS L. PATIN, ESQ.
    COMPANY:                      AMY E. GARBER, ESQ.
                                  Bradley Arant Boult Cummings LLP
                                  1615 L Street, N.W., Suite 1350
                                  Washington, D.C. 20036


FOR WASHINGTON METROPOLITAN       ATTISON L. BARNES, III, ESQ.
    AREA TRANSIT AUTHORITY:       Wiley Rein LLP
                                  1776 K Street, N.W.
                                  Washington, D.C. 20006


(APPEARANCES CONT'D. ON PAGE 2)

(Pages 1 - 15)

COMPUTERIZED TRANSCRIPTION OF STENOGRAPHIC NOTES

```
 1  FOR ISKALO CBR LLC:          LAURIE L. KIRKLAND, ESQ.
                                 Blankingship & Keith P.C.
 2                               4020 University Drive, Suite 300
                                 Fairfax, VA 22030
 3                                 and
                                 CHARLES W. MALCOMB, ESQ.
 4                               Hodgson Russ LLP
                                 The Guaranty Building
 5                               140 Pearl Street, Suite 100
                                 Buffalo, NY 14202-4040
 6
     OFFICIAL COURT REPORTER:    ANNELIESE J. THOMSON, RDR, CRR
 7                               U.S. District Court, Fifth Floor
                                 401 Courthouse Square
 8                               Alexandria, VA 22314
                                 (703)299-8595
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

1                     P R O C E E D I N G S

2              THE CLERK:  Civil Action 17-799, Turner Construction
3    Company v. Washington Metropolitan Area Transit Authority.
4    Would counsel please note their appearances for the record.
5              THE COURT:  Mr. Barnes, you're here for WMATA?
6              MR. BARNES:  Yes, Your Honor.
7              THE COURT:  I'm so used to seeing you on these
8    cybersquatting cases, I'm sure this is a nice change of pace
9    for you.
10             MR. BARNES:  That is correct, especially in front of
11   Your Honor.
12             THE COURT:  And who do we have now for the plaintiff?
13             MS. KIRKLAND:  Good morning, Your Honor.  Laurie
14   Kirkland, and with me is Charles Malcomb, who is admitted pro
15   hac vice.  We're just here for the third-party defendants.
16   We're going to take the second row.
17             THE COURT:  All right, that's fine.  Stay out of the
18   line of fire.
19             MS. KIRKLAND:  Exactly.
20             MR. PATIN:  Good morning, Your Honor.  Douglas Patin
21   and Amy Garber for the plaintiff, Turner Construction.
22             THE COURT:  Good morning.  All right.  Well, we have
23   before us today the plaintiff's motion to dismiss the
24   defendant's counterclaim, and the counterclaim, as I understand
25   it, involves the two different areas of delay that appear to be

1   the main issues in your dispute.  There's the 401-day delay
2   issue, and then there's a 365-day delay.
3          Now, in terms of the 401-day issue -- delay issue,
4   that really is just a response to your case.  I mean, you're
5   claiming that you should be paid for those 401 days, and WMATA
6   is saying you shouldn't be, so it really is just the mirror
7   image of your case, and for that reason, even though it may not
8   have been properly exhausted with the contracting officer
9   procedure, I'm going to deny your motion.  That portion of the
10  counterclaim will go forward.
11         But as to the 365-days, Mr. Barnes, I mean, I think
12  it's undisputed in this record that your client has not
13  submitted that issue to the contracting officer, correct?
14         MR. BARNES:  Your Honor, if I may be heard on that --
15         THE COURT:  Well, just, just answer that question
16  first.
17         MR. BARNES:  Well, it assumes a premise that I don't
18  agree with, which is that it needs to be exhausted.
19         THE COURT:  Well, I understand that's the premise,
20  but, I mean, the fact is the fact that you didn't.  And, you
21  know, the problem we have is that the language, unless I'm
22  missing something, the word "any" appears before the word
23  "dispute."  ". . . [A]ny dispute arising under or related to
24  the Design-Builder's services pursuant to this Agreement,
25  including allegations of breach of contract . . . shall be

1  decided by the Contracting Officer for the Project . . .," at
2  the first instance, obviously.
3         Now, it's a strange provision because it does seem to
4  indicate here that that is a final and conclusive decision,
5  that is, the officer's decision, unless within 30 days, the
6  developer and/or design-builder commence litigation in
7  accordance with this section.  I understand under this, WMATA
8  doesn't have the right to appeal that strange provision.
9         I assume this is your contract, is it not?
10         MR. BARNES:  Well, Your Honor, it was a negotiated
11 contract, and I don't think you can read that provision and
12 have -- and find that the parties intended for WMATA to be able
13 to commence litigation, so that's why it seems only to apply to
14 the developer and the design-builder.
15         In other words, if you, if you take plaintiff's
16 theory, which is let's say that the contracting officer rejects
17 the claim, they're not going to challenge it, which means WMATA
18 could never have a day in court, which can't be the
19 interpretation of that clause.
20         Alternatively, if the contracting officer approves a
21 WMATA claim, then how are we going to enforce it?  How is WMATA
22 going to enforce that?  Because even if they say we're not
23 going to challenge it and that's binding, WMATA is left without
24 a remedy, and that can't be the interpretation of this clause.
25         In other words, I think that would rewrite the clause

```
 1   to add in WMATA, developer and design-builder, can commence
 2   litigation, and again, I don't think that can be the intent of
 3   the parties here.
 4           THE COURT:  Well, if nothing else, it's confusing.  I
 5   mean, clearly, the word "any" means "any," and clearly, you-all
 6   could have written the language so that this particular problem
 7   would not arise.
 8           MR. BARNES:  Well, the only reason to read it
 9   consistently is for "any" to apply to those who can commence
10   litigation, which is developer and design-builder.  I don't see
11   why WMATA's claim should be dependent on whether someone else,
12   a third party, can file --
13           THE COURT:  Well, the only advantage, though, is by
14   having -- by requiring the parties to go to the contracting
15   officer, that, I think, was intended, I would assume, to save
16   the parties some time and money to get a more expedited
17   resolution of a dispute, and so I think it would make just as
18   good sense if WMATA is unhappy with something, to have it
19   adjusted in that very efficient fashion rather than having to
20   come to court and do it.
21           MR. BARNES:  Well, it still would read into that
22   provision that WMATA is dependent on either the developer or
23   the design-builder filing an action, which I don't think you
24   can read that provision that way.  And regardless, I think the
25   intent of that, the contract and bringing it, an action before
```

1  the Court is to have everyone understand, well, there's a delay
2  claim on this side, and as Your Honor has already recognized,
3  there's a delay claim on this side.
4  　　　　　Everyone understands that those disputes are going to
5  be before this Court.  I think it's at this point even if the
6  provision applies to WMATA, it's going to be busy work more
7  than anything, and we're going to be right back here, and we
8  end up with piecemeal litigation.  In other words, I'm not sure
9  what the end game is for Turner.
10 　　　　　THE COURT:  Well, that's the more interesting
11 pragmatic question.  Regardless of what the contract requires,
12 it does result if I find in the defendant's favor on this, it's
13 just a further delay, that is, that 365-day claim is going to
14 go to the contracting officer, and it takes, I guess, a couple
15 of months to work it out there, and then you still wouldn't
16 know what the situation is.
17 　　　　　From a practical standpoint, it seems to me it would
18 make more sense to have it all before the Court in one package,
19 let's just get it all resolved.  And, of course, some of you
20 who've been before this Court know that the next step I'm going
21 to do is really push you hard to try to sit down with a
22 magistrate judge or a private mediator, if you haven't thought
23 about it, and try to work this out.
24 　　　　　I've never seen a construction case in all the years
25 I've been on the bench where anybody gets 100 percent on the

1  dollar.  These cases always have issues.  This is a complex
2  construction project, with lots of different, multiple players,
3  part of which may be problems with Fairfax County.  If the
4  county was diligent in -- was delinquent in meeting its
5  deadlines, etc., some of the delay clearly can't be attributed
6  to the parties that are involved in this litigation.
7          Have you not tried to work this out just globally?
8          MR. BARNES:  Your Honor, there is -- there's a lot
9  behind the scenes here.  There are many, many change orders
10 that have been submitted by Turner --
11         THE COURT:  Oh, I'm sure.
12         MR. BARNES:  -- which was our issue the last time we
13 came here in September.
14         Our position was Turner has rushed to the Court.  We
15 offered not to hold them to a 30-day time frame to file these
16 things, but this is a little bit of Turner's own making in that
17 we're trying to deal with these change orders, and there are a
18 lot of them, which again goes to the judicial inefficiencies of
19 trying to resolve these one-off claims, and I wasn't sure
20 whether Turner just wanted its claims to be resolved, but
21 again, that's why the stay order that Your Honor signed said:
22 I want to give a stay so we can bring all claims and all
23 parties before the Court, and that's what we did.
24         So we brought our delay claims.  We brought the other
25 party in, who is Iskalo, which is Turner's partner, and even

9

1 Turner, I believe, says Iskalo was the one who's responsible
2 for getting the site permit.
3 　　　　So that was the intent of bringing in our
4 counterclaim and third-party complaint as well as if we're
5 going to fight about delay, let's bring all the delay in
6 because that's what's judicially efficient.
7 　　　　THE COURT: Oh, I certainly agree with that. So let
8 me hear from the plaintiff as to why we shouldn't just, you
9 know, let's get this case resolved. Is the project 100 percent
10 finished at this point, or is there still work going on?
11 　　　　MR. PATIN: Our original contract scope is complete.
12 WMATA has asked for additional work to be done outside that.
13 　　　　THE COURT: So it's not just a punch list situation.
14 　　　　MR. PATIN: Correct.
15 　　　　THE COURT: Okay.
16 　　　　MR. PATIN: That's correct. It's not just punch
17 list.
18 　　　　THE COURT: Has the punch list, though, been
19 satisfied? In other words, everything is done on the original
20 contract?
21 　　　　MR. PATIN: Your Honor, I believe so, but I don't
22 want to tell you I know that 100 percent.
23 　　　　THE COURT: All right.
24 　　　　MR. PATIN: I don't think there are any disputes over
25 punch lists or the final original scope has changed, but WMATA

1   did issue a change order to us after it was accepted to do some
2   additional work, but I don't anticipate that's going to be a
3   dispute.
4           THE COURT:  All right.  So why would you not want
5   everything to get resolved in one basket?
6           MR. PATIN:  Well, in theory, we would, Your Honor --
7           THE COURT:  All right.
8           MR. PATIN:  -- but we have an issue with how slow
9   WMATA handles things.
10          We have subcontractors who are really at risk with
11  the delay --
12          THE COURT:  Well, wait.  Let me just tell you this:
13  I mean, you're in this court.  We'll move this case quite
14  quickly, all right?  So it makes no sense to me from a
15  litigation strategy why you would want to delay getting this
16  365-day delay matter resolved.  Your motion, were I to grant
17  it, correct --
18          MR. PATIN:  I'm sorry, Your Honor?
19          THE COURT:  If I were to grant your motion --
20          MR. PATIN:  Yes.
21          THE COURT:  -- what we would be doing is striking the
22  counterclaim because it didn't go to the contracting officer.
23          WMATA can then go to the contracting officer.
24  They're not time-barred from doing that, correct?
25          MR. PATIN:  Correct.

1          THE COURT:  That's going to -- and then let's say
2   whatever the contracting officer does, unless it finds in your
3   favor -- well, if it found in your favor, WMATA is stuck.  They
4   can't appeal, or it would look that way under the -- they can't
5   litigate that.  But if they -- if the individual doesn't find
6   in your favor, I mean, then we're back wanting to amend the
7   complaint, right?
8          MR. PATIN:  That's correct, absolutely.
9          THE COURT:  That's silly.  Let's get it all taken
10  care of now.  And you just told me you want this thing resolved
11  quickly.  It's going to get a much faster resolution of all the
12  issues by keeping that counterclaim in the case.
13         MR. PATIN:  Your Honor, I didn't write the contract.
14  I'm sorry, I have to follow what the contract says.
15         THE COURT:  All right.
16         MR. PATIN:  We're following the contract.  I don't
17  want to have jurisdictional or procedural issues.
18         THE COURT:  Well, let me ask you, Mr. Barnes, is
19  WMATA going to make any argument should the Court not strike
20  your counterclaim that if some of this 365-day issue gets
21  resolved in this proceeding, that somehow it would be subject
22  to attack because the contract wasn't complied with in terms of
23  you having to exhaust your remedies?
24         MR. BARNES:  That's not our intent, Your Honor.
25         THE COURT:  All right.  You've got that on the

```
 1   record.
 2          MR. PATIN:  And, Your Honor, the contracting officer
 3   may not agree with WMATA on 365 --
 4          THE COURT:  It doesn't make any difference.
 5          MR. PATIN:  -- days -- pardon me?
 6          THE COURT:  Oh, in any case, I'm going to deny your
 7   request.  I think that the contract, although it does say "any
 8   dispute," I think that Mr. Barnes has raised a legitimate issue
 9   about the strange way in which the ability to come to court is
10   included or excluded in that portion of the contract.  In any
11   case, WMATA is not going to raise an objection to the -- any
12   judgment that might occur as a result of the counterclaim being
13   considered without it having gone to the contracting officer.
14          So I'm going to deny your motion to strike.  We need
15   to get this matter resolved expeditiously, and it will be,
16   which is ultimately what you-all want, all right?  So --
17          MR. PATIN:  Well, if you've made up your mind, Your
18   Honor --
19          THE COURT:  I have.
20          MR. PATIN:  -- but I have not had a chance to address
21   his argument that somehow WMATA is without a remedy.
22          That's just not correct.
23          THE COURT:  All right.  Well, in any case, I've made
24   my ruling.  Now, I'm going to suggest if you really are
25   concerned about -- and it's always a good idea to try to
```

1  resolve these cases as expeditiously as possible -- that
2  you-all should think about whether or not you want to sit down,
3  and this would also apply, frankly, to the third party down the
4  road -- sit down and decide about whether you want to try to
5  sit with a magistrate judge to resolve this case.
6            Judge Buchanan, she's not the magistrate judge
7  assigned to this case, but I can tell you that she has settled
8  some incredibly complex multiparty cases, as has Judge Anderson
9  and Judge Nachmanoff and Judge Davis as well, but you might
10 want to go before a magistrate who's not going to be involved
11 in your discovery disputes, if you have any.
12           So you-all can decide what you want to do.  If you
13 decide that you want to use a magistrate judge other than Judge
14 Davis because he will be doing all of your discovery issues,
15 give my chambers a call, and I'll see who among the other three
16 might be available.  And you can always involve a private
17 mediator.
18           But as I said, these cases always settle.  I very
19 seldom see one of these multiparty construction cases go to
20 trial because there are so many issues that intelligent
21 businesspeople can resolve, all right?
22           And in a complex project, you know, we've been
23 working on this courthouse project for ages, it's way over
24 time, and part of the reason it's over time is that the poor
25 guys who were doing construction bumped into all sorts of

```
 1  things that nobody had anticipated, power lines that nobody
 2  knew about, permitting issues, I mean, not unlike some of the
 3  things that I think went on in this project.  And, you know, I
 4  mean, there are reasonable ways that reasonable businesspeople
 5  can work these things out, so I would expect that you-all would
 6  give that a hard try.
 7          In terms of the motion that's on for next week which
 8  has to do with the third-party complaint, perhaps today's
 9  ruling will have resolved that for you-all, all right?  And it
10  might --
11          MR. MALCOMB:  Your Honor?
12          THE COURT:  Yeah, I'll let you come and speak even
13  though you're not technically on the docket.
14          MR. MALCOMB:  Yes, thank you, Your Honor.
15          THE COURT:  Yeah.
16          MR. MALCOMB:  Charles Malcomb for Iskalo CBR.  I
17  believe the Court's ruling does resolve one of our points.
18          THE COURT:  Yeah.
19          MR. MALCOMB:  However, we've made a motion on the
20  basis that they failed to state a claim with respect to their
21  breach of contract claims and for contribution, which are
22  separate and apart from the precondition.
23          THE COURT:  Then if you still want to come next week,
24  you're welcome to, but again, I always think it's important to
25  try to save attorneys' fees.  I mean, again, transaction costs
```

15

1  also add to the woe of the parties, so think about whether you
2  really want to go forward with that or let's just get this
3  whole thing resolved, all right?
4          MR. MALCOMB:  Yes, Your Honor.
5          THE COURT:  All right, you're free to go.
6          MR. BARNES:  Thank you, Your Honor.
7                      (Which were all the proceedings
8                       had at this time.)
9
10                 CERTIFICATE OF THE REPORTER
11    I certify that the foregoing is a correct transcript of
12 the record of proceedings in the above-entitled matter.
13
14
15                                   /s/
                                  Anneliese J. Thomson
16
17
18
19
20
21
22
23
24
25